# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DAMON MICHAEL DIMARTINO, | Case No. 19-CV-0427 (JRT/SER) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| JEFF TITUS, | |
| Defendant. | |

Petitioner Damon Michael DiMartino, a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1 (Petition); *see also* Attach. A, ECF No. 1-1 (supplement to Petition) (Attachment).[1]  This Court reviewed the Petition under Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts. The Court determined that the Petition contains one procedurally defaulted claim and one unexhausted claim. As a result, the Court recommends dismissal (with prejudice) of the procedurally defaulted claim, and dismissal (without prejudice) of the unexhausted claim.

**I.   BACKGROUND**

Minnesota authorities charged DiMartino in November 2015 with promoting prostitution by a person under 18 years old. *See State v. DiMartino*, No. A17-0133, 2017

---

[1] Pages 6 and 7 of the Attachment were inadvertently left out of DiMartino's initial filing, but he submitted them several days later in a document filed at ECF No. 4. *Cf.* Letter from Damon DiMartino to U.S. District Court (Feb. 18, 2019), ECF No. 3 (providing explanation). References to pages 6 and 7 of the Attachment are thus to this document.

WL 6272707, at *1 (Minn. Ct. App. Dec. 11, 2017). A jury trial began in June 2016, but between jury selection and opening statements, DiMartino elected to plead guilty. *See id.* After engaging in a plea colloquy with DiMartino, the district court found that there was a sufficient factual basis for the plea, but chose to wait until sentencing to formally accept the plea. *See id.* Before sentencing, however, DiMartino moved to withdraw the plea, asserting that "he did not voluntarily agree to the guilty plea because he was not taking his antidepressant medication at the time he entered the plea." *Id.* The district court denied the motion and sentenced DiMartino to 240 months imprisonment. *See id.*

On appeal, DiMartino argued that "(1) he had the right to amend his plea prior to the district court's acceptance of the plea; (2) his plea [was] invalid and create[d] a manifest injustice; and (3) the district court abused its discretion by denying his withdrawal of the plea . . . ." *Id.* The Minnesota Court of Appeals rejected all three arguments and affirmed the trial-court judgment. *See id.* at *1–5. DiMartino sought review from the Minnesota Supreme Court, but that court denied review on February 20, 2018. *See id.* at *1 (noting denial of review).

DiMartino mailed the present Petition to the Court on February 15, 2019, and the Clerk of Court filed it on February 21, 2019. *See* Pet. 2, 16. The Petition presents two grounds for review. Ground One asserts that "[t]he Minnesota Court of Appeals['s] rejection of [DiMartino's] withdrawal of guilty plea claim is contrary to *Boykin v. Alabama*." Pet. 6; *see also* Attach. 1–6 (discussing claim); *cf. Boykin v. Alabama*, 395 U.S. 238, 242 (1967) (deeming it error for trial judge to "accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary"). Ground Two

2

asserts that DiMartino's appellate counsel "was ineffective for failing to make a *Hill v. Lockhart* challenge." Pet. 8; *see also* Attach. 6–7 (discussing claim); *cf. Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (stating that when "defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases" (internal quotation marks and citation omitted)).

## II. ANALYSIS

### A. Ground One

DiMartino asserts that he exhausted Ground One in the Minnesota state courts. *See* Pet. 7. The Court disagrees; Ground One was procedurally defaulted.

A court may not grant a § 2254 petition unless the petitioner has exhausted his state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"). The U.S. Supreme Court explained this requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

3

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted); *see also, e.g.*, *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (quoting *Baldwin*). A claim has been "fairly presented" to the state courts if "the state court rules on the merits of [the petitioner's] claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

In Minnesota, fair presentation requires presentation to the Minnesota Supreme Court. *See, e.g.*, *Latimer v. Smith*, 351 F. Supp. 3d 1218, 1224 (D. Minn. 2018). The relevant question here, then, is whether DiMartino fairly presented his *Boykin* claim to the Minnesota Supreme Court under either prong of the fair-presentation test.

It is worth pausing here to clarify what DiMartino's *Boykin* argument is. Ground One cites as error that "[t]he Minnesota Court of Appeals analysis did not include [*Boykin*] considerations," because "[t]he record is devoid as to why Petitioner provided testimony contrary to guilt." Attach. 6. As the Court construes the argument, DiMartino contends that the Court of Appeals's decision was contrary to, or involved an unreasonable application of, *Boykin*. *Cf.* 28 U.S.C. § 2254(d)(1) (stating that § 2254 application "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). The fair-presentation requirement thus demands that DiMartino informed the Minnesota Supreme Court of this specific problem with the Court of Appeals's decision.

4

We look first at the fair-presentation test's ruling-on-merits prong.  The Minnesota Supreme Court plainly did not assess the merits of a *Boykin*-related argument.  The Minnesota Supreme Court summarily denied review of the Court of Appeals's decision; it did not decide anything on the merits, much less anything concerning *Boykin*.  Whether DiMartino fairly presented a *Boykin* argument therefore depends on whether he presented that argument to the Minnesota Supreme Court "in a manner that entitle[d] him to a ruling on the merits."  To be so entitled, the petitioner must have referred "'to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'"  *Nash*, 807 F.3d at 898 (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999) (en banc)).

The Court examined the Petition for Review that DiMartino submitted to the Minnesota Supreme Court.  *See* Pet. for Review of the Decision of the Minn. Ct. of Appeals, *State v. DiMartino*, No. A17-0133 (Minn. Jan. 8, 2018) (Review Petition), *available at* http://macsnc.courts.state.mn.us/ctrack/publicLogin.jsp (last accessed Apr. 3, 2019).  The Review Petition does not refer to any specific constitutional right or constitutional provision, nor does it cite any federal constitutional cases.  *See id.* at 5–9 (containing Review Petition's argument section).  This means that for DiMartino to have fairly presented his *Boykin* argument to the Minnesota Supreme Court, he needed to cite a "state case raising a pertinent federal constitutional issue."

5

The Review Petition's argument section cites eight Minnesota cases. *See id.*[2] Several involve questions about when withdrawing a guilty plea is permissible. But merely citing cases about the general issue of guilty-plea withdrawal is not enough to show that DiMartino fairly presented the Minnesota Supreme Court with the issue he now asserts as error. DiMartino must show that he raised below the specific issue he raises now. On this point, he fails. None of the cases he cites discusses, or even mentions, *Boykin*. Furthermore, DiMartino appears to suggest that *Boykin* requires that when, during a plea colloquy, a defendant makes statements that are "contrary to guilt," a state-court judge conducting the colloquy must—as a matter of federal constitutional law—inquire about those statements. *See* Attach. 6. While some of the Minnesota cases cited in the Review Petition touch on federal-law issues, none make this point. Ground One therefore was not fairly presented to the Minnesota courts, and is unexhausted.

Unfortunately for DiMartino, he not only failed to exhaust this issue before the Minnesota courts, but Minnesota law bars him from raising it now. DiMartino has already pursued a direct appeal, so the remaining state-court route for him to challenge his conviction is a petition for postconviction review. In Minnesota courts, however, *State v. Knaffla* holds that "where [a] direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent

---

[2] The cases (in reverse chronological order) are *Barrow v. State*, 862 N.W.2d 686 (Minn. 2015); *Campos v. State*, 816 N.W.2d 480 (Minn. 2012); *State v. Jeffries*, 806 N.W.2d 56 (Minn. 2011); *State v. Farnsworth*, 738 N.W.2d 364 (Minn. 2007); *State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003); *State v. Tuttle*, 504 N.W.2d 252 (Minn. Ct. App. 1993); *State v. McElhaney*, 345 N.W.2d 800 (Minn. 1984); and *Chapman v. State*, 162 N.W.2d 698, 700 (Minn. 1968).

petition for postconviction relief." 243 N.W.2d 737, 741 (Minn. 1976); *see also Anderson v. State*, 830 N.W.2d 1, 8 (Minn. 2013) ("[A] petition for postconviction relief raising claims that were raised on direct appeal, or were known *or should have been known* but were not raised at the time of the direct appeal, are procedurally barred.") (emphasis added).[3] DiMartino plainly could have raised his *Boykin* argument before the Minnesota Supreme Court; but failed to do so.

Having not fairly presented a *Boykin* argument to the Minnesota courts before, and being *Knaffla*-barred from doing so now, DiMartino procedurally defaulted that argument. And while a petitioner can escape procedural default's consequences by showing cause and prejudice excusing the default, DiMartino's filings make no attempt to do this. DiMartino procedurally defaulted Ground One.

**B.     Ground Two**

This leaves the Petition's Ground Two. As noted above, a § 2254 petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." The Petition concedes that DiMartino has not exhausted Ground Two. *See* Pet. 7–8.

The Court agrees. The Minnesota Court of Appeals did not address any claim of ineffective assistance of appellate counsel, and DiMartino states that he never made such an argument to that court. *See id.* at 8. That makes sense; Minnesota criminal defendants

---

[3] "There are two exceptions to the *Knaffla* rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review." *Schleicher v. State*, 718 N.W.2d 440, 447 (Minn. 2006) (internal quotation marks and citation omitted). Neither exception appears to apply in this case.

7

generally cannot raise a claim of ineffective assistance of appellate counsel on direct appeal. *See*, *e.g.*, *Rassmussen v. State*, No. A18-1150, 2019 WL 1007785, at *4 (Minn. Ct. App. Mar. 4, 2019) (quoting *Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007)). Such claims instead must be raised in a petition for postconviction review. Ground Two is therefore unexhausted.

### C. Additional Points

In summary, Ground One of the Petition is procedurally defaulted, and Ground Two is unexhausted. In such a situation, the Court may dismiss the procedurally defaulted claim with prejudice and dismiss the unexhausted claim without prejudice so that the petitioner can pursue that claim in state court. *See, e.g.*, *Abdillahi v. Miles*, No. 16-CV-0963 (JNE/HB), 2017 WL 4047859, at *10 (D. Minn. June 29, 2017) (dismissing with prejudice procedurally barred claims in habeas petition, and dismissing without prejudice remaining "mixed" petition presenting exhausted and unexhausted claims), *report and recommendation adopted*, 2017 WL 4022407 (D. Minn. Sept. 12, 2017), *certificate of appealability denied*, 2018 WL 1989640 (8th Cir. Mar. 19, 2018); *cf. Wilkins v. Macomber*, No. 16-CV-0221 (SI), 2019 WL 120731, at *6–9, *14 (N.D. Cal. Jan. 7, 2019) (same); *Garner v. Small*, No. 09-CV-9332 (SVW/JC), 2011 WL 1584062, at *5–9 (C.D. Cal. Jan. 7, 2011) (same), *report and recommendation adopted*, 2011 WL 1627941 (C.D. Cal. Apr. 21, 2011). The Court thus recommends dismissing Ground One of the Petition with prejudice, and dismissing Ground Two of the Petition without prejudice.

Dismissal of Ground Two without prejudice will permit DiMartino to file a federal habeas petition based on that ground—once he has exhausted his state-court remedies—without running afoul of the prohibition against "second or successive" petitions. *See* 28 U.S.C. § 2244(b); *Slack v. McDaniel*, 529 U.S. 473, 485–86 (2000) ("A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition."). DiMartino must be mindful of the requirement that a federal habeas petition must be filed within one year of his conviction becoming final and that a "properly filed" postconviction petition tolls this time period. *See* 28 U.S.C. § 2244(d)(2).[4]

As a final point, a § 2254 habeas petitioner cannot appeal a denial of his petition unless he is granted a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1);

---

[4] The Petition suggests that DiMartino believes that his § 2244(d) limitations period began to run on February 20, 2018, the date that the Minnesota Supreme Court denied DiMartino's request for review. *See* Pet. 15. This appears to be based on a misreading of § 2244(d). Under § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." This limitations period runs from the latest of four dates; the only one that appears to apply here is the date in § 2244(d)(1)(A): "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Here, the one-year limitations period began running when the time expired for DiMartino to seek review of the Minnesota Supreme Court's decision. The Minnesota Supreme Court denied DiMartino's request for review on February 20, 2018, and the Minnesota Court of Appeals entered judgment on February 22, 2018. *See DiMartino*, 2017 WL 6272707, at *1; J., *State v. DiMartino*, No. A17-0133 (Minn. Ct. App. Feb. 22, 2018). DiMartino had ninety days from the judgment's entry to petition the U.S. Supreme Court for a writ of certiorari. *See* Sup. Ct. R. 13.1. DiMartino thus had until May 23, 2018, to petition for certiorari. The one-year limitations period began running on that date. The Court recommends that DiMartino be mindful of these dates as he makes decisions on how to proceed.

9

Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484.

In this case, the Court finds it unlikely that any other court, including the U.S. Court of Appeals for the Eighth Circuit, would decide DiMartino's claims any differently than they have been decided here.  DiMartino has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review.  Therefore, the Court recommends that DiMartino not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner Damon Michael DiMartino's Petition (ECF No. 1) be **DENIED WITH PREJUDICE** with respect to Ground One and **DENIED WITHOUT PREJUDICE** with respect to Ground Two.

2. No certificate of appealability be granted.


Dated: April 17, 2019                     s/ *Steven E. Rau*
                                          Steven E. Rau
                                          U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).